UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JOHNNY NICHOLS, ) | |
| ) | |
| Plaintiff; ) | |
| ) | |
| v. ) | CAUSE NO. 3:13-cv-01205-CAN |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

On November 20, 2013, Plaintiff Johnny Nichols ("Nichols") filed his complaint in this Court seeking reversal of the Commissioner's final decision denying his application for Disability Insurance Benefits. Alternatively, Nichols seeks remand for further consideration of his application for Disability Insurance Benefits. On June 4, 2014, Nichols filed Plaintiff's Memorandum in Support of His Motion to Reverse the Decision of the Commissioner of Social Security. [Doc. No. 19]. On September 9, 2014, Defendant Commissioner of Social Security ("Commissioner") filed a response, asking the Court to affirm the decision denying benefits. [Doc. No. 24]. Nichols filed a reply brief on September 24, 2014. [Doc. No. 25]. This Court may enter a ruling in this matter based on the parties consent, 28 U.S.C. § 636(c), and 42 U.S.C. § 405(g).

I.  **RELEVANT BACKGROUND**

In January 2011, Nichols filed an application for Disability Insurance Benefits with the Social Security Administration ("SSA") alleging disability beginning January 9, 2011. After the SSA denied Nichols's application initially and upon reconsideration, an administrative law judge ("ALJ") held a hearing regarding Nichols's application on July 20, 2012.

Mr. Nichols was born on November 1, 1966, making him 44 years old at the alleged disability onset date. Nichols has a high school education and lives with wife and son. Prior to the alleged onset date Nichols worked at Weil McLain for approximately 25 years performing various jobs, some requiring Nichols to regularly lift 300-400 pounds. At his hearing before the ALJ, Nichols testified that over the past 10 years he had developed back pain that had finally reach the point of debilitation. Nichols provided the ALJ with medical evidence from 2008, three years before the alleged onset date, up to the date of the hearing in July 2012 that documented his visits to various doctors, including his treating physician Dr. Kora. The medical evidence and opinions show repeated visits and treatment for back pain.

Before the ALJ, Nichols also testified about his episodes of depression, which began about two months before the hearing. Dr. Kora had referred Nichols to a clinical psychologist, Dr. Israel, to discuss the depression that Nichols believed was caused by his back pain. In July 2012, just before the ALJ's hearing, Nichols underwent a psychiatric evaluation after admitting thoughts of suicide to Dr. Israel that were apparently brought on by stress, familial relationship troubles, and his back pain. The records of Nichols's episode of depression were in the record presented to the ALJ at the hearing.

After the hearing, the ALJ issued a written decision reflecting the following findings based on the five-step disability evaluation prescribed in the Social Security Administration's ("SSA's") regulations. At Step One, the ALJ found that Nichols had not engaged in substantial gainful activity since January 9, 2011, the alleged onset date. At Step Two, the ALJ found that the degenerative changes of Nichols's lumbar spine and hips, and his depression were severe impairments. At Step Three, the ALJ found that Nichols's impairments did not meet or medically equal the severity of a listed impairment. The ALJ also found that Nichols had the residual

functional capacity to perform sedentary work except that Nichols could "never climb ladders, ropes and scaffolds; occasionally climb ramp and stairs; occasionally stoop, kneel, crouch or crawl; would need a hand-held assistive device for uneven terrain and prolonged ambulation; would never be able to work around unprotected heights and vibration; and limited to simple, routine, repetitive tasks." Doc. No. 13 at 50. At Step Four, the ALJ found that Nichols was unable to perform any past relevant work. At Step Five, the ALJ considered Nichols's age, education, work experience, and residual functional capacity from which he determined that jobs existed in the national economy that Nichols could perform, such as a final assembler of optical goods, a telemarketer, or a call out operator.

Based on these findings, the ALJ determined that Nichols had not been disabled from January 9, 2011, which was reflected in his written decision issued on August 10, 2012. Nichols requested that the Appeals Council review the decision of the ALJ and on September 21, 2013, the Appeals Council denied the request. Thus, the ALJ's decision became the final decision of the Commissioner for the purposes of judicial review.

## II. ANALYSIS

### A. Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart,* 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence is more than a mere scintilla but may be less than the weight of the evidence. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Thus, substantial evidence is simply "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Kepple v. Massanari*, 468 F.3d 513, 516 (7th Cir. 2001).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart,* 395 F.3d 421, 425 (7th Cir. 2005). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel,* 167 F.3d 369, 373 (7th Cir. 1999).

Minimally, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart,* 297 F.3d 589, 595 (7th Cir. 2002). In other words, an ALJ must "build an accurate and logical bridge from the evidence to [his] conclusion so that [the reviewing court] may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles ex rel. Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007). The ALJ need not specifically address every piece of evidence in the record, but must present a "logical bridge" from the evidence to his conclusions. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010). The ALJ must provide a glimpse into the reasoning behind the his analysis and decision to deny benefits. *Zurawski v. Halter,* 245 F.3d 881, 889 (7th Cir. 2001).

**B.     Disability Standard**

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. § 404.1520(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functional capacity ("RFC"), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i)-(v); *see also Scheck,* 357 F.3d at 699–700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [the individual's] limitations." *Dixon v. Massanari,* 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue,* 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski,* 245 F.3d at 886; *see also Knight v. Chater,* 55 F.3d 309, 313 (7th Cir. 1995).

### C. Issues Presented for Review

Nichols seeks reversal and remand of the ALJ's decision arguing that (1) the ALJ erred by finding that his impairments did not meet or medically equal a listed impairment; (2) the ALJ failed to give the treating physician the appropriate weight; (3) the ALJ failed to build a logical bridge when evaluating the Nichols's depression and mental RFC; (4) the ALJ erred by not analyzing Nichols's credibility properly. For the reasons discussed below, the Court finds remand appropriate in this case.

Nichols's first contention is that the ALJ erred by finding that his impairments, or combination of impairments, did not meet or medically equal a listed impairment. Moreover, Nichols contends that the ALJ failed to mention whether he specifically considered if Nichols's degenerative disc disease of the lumbar spine met the requirements for Listing 1.04. However, the Commissioner argues that the ALJ did not need to explicitly mention the listing. The Commissioner also argues that the ALJ analyzed the evidence relevant to the Listing analysis elsewhere in the opinion and did not need to repeat his consideration of that evidence in the Step Three section of the opinion.

Appendix 1 of the disability regulations contains a "Listing of Impairments" that the SSA has pre-determined are disabling regardless of a claimant's age, education, or work experience. 20 C.F.R. § 404.1525(a). The Listings enumerate criteria necessary to establish initially that a claimant's diagnosis is based on acceptable medical evidence. 20 C.F.R. § 404.1525(c)(2). The remaining criteria establish the severity necessary for an impairment to be considered disabling. 20 C.F.R. § 404.1525(c)(2). For example, a claimant meets Listing 1.04(A) for spinal disorders when he provides evidence of "nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss . . . accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, Listing 1.04(A).

An ALJ's Listing determination typically "must discuss the listing by name and offer more than a perfunctory analysis of the listing." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). However, the Seventh Circuit does not require an ALJ to mention all of the relevant listings he considered in his Step Three analysis of Listings if the record has been sufficiently developed and articulated somewhere within the ALJ's decision to show more than a perfunctory analysis. *Adkins v. Astrue*, 226 F. App'x 600, 605–06 (7th Cir. 2007). In *Adkins*, the plaintiff sought review and remand of an ALJ's decision that he was not disabled because, among other things, the ALJ failed to identify a specific listing in his Step Three analysis. *Id*. at 604–605. Despite this shortcoming, the Seventh Circuit affirmed the ALJ's decision reasoning that, although clearly mentioning the listing would have been helpful, the ALJ spent "several pages of [the] decision on an exhaustive discussion" of issues relevant to the specific listing that the plaintiff argued was not considered. *Id.* at 605–06. In contrast, the Seventh Circuit in *Ribaudo v. Barnhart*, 458 F.3d 580, 583–84 (7th Cir. 2006) remanded an ALJ's decision for further

proceedings because the ALJ had only provided a short, two sentence discussion at Step Three related to the plaintiff's back pain without identifying a specific listing or evaluating any of the available evidence that was favorable to the plaintiff's claim. *Id.*

Here, the ALJ, like the ALJs in *Adkins* and *Ribaudo*, did not explicitly mention which listing he considered when determining at Step Three whether Nichols's degenerative disc disease met or medically equaled a Listing. Nevertheless, the Commissioner contends that the ALJ's consideration of Nichols's back impairment in the section of his decision related to the RFC determination sufficiently addressed evidence that was also relevant to the Listings. As a result, the Commissioner contends the ALJ was not required to repeat its discussion of that evidence in the section of his decision related to the Listings. The Commissioner points the Court to the ALJ's decision in *Adkins* and as such, asks the Court to find that the ALJ's analysis in the RFC section to constitute substantial evidence in support of the Listing determination. However, the Court is not persuaded.

The Court agrees with the Commissioner that the ALJ did provide and analyze evidence in the RFC section that could relate to a relevant Listing. Yet, the ALJ's discussion of that evidence was limited to ascertaining Nichols's work-related limitations and remaining functionality. It shed little to no light on how or if Nichols's back impairments met or medically equaled a Listing. And even if the medical evidence was related to the relevant Listings, the ALJ failed to provide the logical bridge necessary for the undersigned, with no medical expertise, to see the connection. As a result, this Court, like the court in *Ribaudo*, is left unable to trace the ALJ's rationale for finding that Nichols's back impairment did not meet or equal a Listing and cannot adequately review the ALJ's Step Three Listings analysis. Therefore, the ALJ's Step Three analysis is not supported by substantial evidence and this matter requires remand so the

ALJ may explain his Step Three analysis of Nichols's degenerative changes of the lumbar spine and hips.

Having determined that remand is warranted based on the ALJ's Step Three analysis, the Court need not reach any conclusions as to Nichols's RFC-related arguments regarding his credibility, the weight given to the opinion of his treating physician, and the ALJ's explanation of his mental RFC finding. Indeed, the Court is not troubled by Nichols's remaining contentions regarding the weight the ALJs gave to Nichols's treating physician or the ALJ's explanation of the mental RFC finding. However, the Court is concerned about the ALJ's credibility analysis. The crux of Nichols's credibility contention is that the ALJ performed the pain analysis improperly when determining Nichols's credibility. Nichols specifically contends that the ALJ violated SSR 96-7p by failing to consider the side effects of Nichols's medication when analyzing Nichols's credibility and symptoms. On the other hand, the Commissioner argues that the ALJ's credibility findings were supported by substantial evidence and that consideration of any medicinal side effects would not change the outcome and is therefore, harmless.

An ALJ's credibility finding is reviewed deferentially and will not be set aside unless it is "patently wrong." *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008). However, Social Security Regulation 96-7p explains that an ALJ must consider the "type, dosage, effectiveness, and *side effects* of any medication" taken to alleviate pain or other symptoms as one of the factors when assessing the credibility of an individual's statements. SSR 96-7p. Because this case is already being remanded, the Court need not reach any conclusions as to whether this error was harmful. If an RFC determination is required on remand, however, the ALJ should take the opportunity to review and express an analysis of all the factors that must be considered when determining

Nichols's credibility. *See Key v. Sullivan*, 925 F.2d 1056, 1061 (7th Cir. 1991) ("If an issue is left open after remand, the lower tribunal is free to decide it.").

## II. CONCLUSION

Because the ALJ's Step Three analysis is not supported by substantial evidence, the Court now **GRANTS** Nichols's request to reverse and remand this case. [Doc. No. 19]. This case is **REMANDED** to the Commissioner for further proceedings consistent with this opinion. The Clerk is **DIRECTED** to terminate the case.

**SO ORDERED.**

Dated this 13th day of January, 2015.

s/Christopher A. Nuechterlein
Christopher A. Nuechterlein
United States Magistrate Judge